**Jonathon HOPSON, Plaintiff,**

v.

**Dale FOLTZ, Defendant.**

**Civ. A. No. 85–CV–70286–DT.**

United States District Court,
E.D. Michigan, S.D.

Jan. 10, 1986.

Certificate of Probable Cause
Denied Feb. 13, 1986.

Jonathon Hopson, in pro. per.

John D. O'Hair, Wayne County Pros. Atty., Detroit, Mich., for Foltz.

1. M.C.L.A. § 750.316, M.S.A. § 28.548

2. M.C.L.A. § 750.227b, M.S.A. § 28.424(2)

3. M.C.L.A. § 750.317, M.S.A. § 28.549

4. Petitioner was sentenced to life in prison on the murder conviction.

## MEMORANDUM OPINION AND ORDER DISMISSING PETITIONER'S APPLICATION FOR WRIT OF HABEAS CORPUS

LA PLATA, District Judge.

### I. *Introduction*

Charged with first-degree murder[1] and possession of a firearm in the commission of a felony,[2] Petitioner, Jonathon Hopson, was convicted by a jury in Recorder's Court of second-degree murder[3] and the firearm charge on June 9, 1981.[4] On January 27, 1983, the Michigan Court of Appeals, in an unpublished opinion, affirmed the murder conviction but vacated the firearm conviction.[5] On November 30, 1984, the Michigan Supreme Court denied Petitioner's application for leave to appeal.[6]

### II. *Application for Writ of Habeas Corpus*

On January 22, 1985, Petitioner, incarcerated at the State Prison of Southern Michigan at Jackson, filed a Petition for a Writ of Habeas Corpus, 28 U.S.C. § 2254. Therein, he raised only one issue, claiming that the prosecuting attorney failed to adduce sufficient evidence to permit a jury to find that he was guilty beyond a reasonable doubt of second-degree murder.

### III. *Facts*

During the early morning of October 10, 1980, Alfred Hagwood was fatally shot in an alley off Hillger Street between E. Jefferson and Kerchevel in Detroit. The theory of the prosecution was that Petitioner, Kenneth Weaver, and Keith Weaver (neither of whom was tried along with Petitioner) aided and abetted Fred Thompson in the first-degree slaying of Hagwood.

The one eyewitness to the homicide, Elaine Faye Peterson, testified that she observed the victim, Petitioner, Kenneth

5. Docket No. 60184

6. Docket No. 71063. Justice Levin voted to grant leave to appeal to consider whether sufficient evidence was adduced to establish that Petitioner participated in the crime.

Weaver, and Keith Weaver at the San-Zu-Zee Bar, located at Hart and Jefferson in the City of Detroit, between 9:30 p.m. and 10:00 p.m. on October 9, 1985, where she noticed the victim "arguing" with Petitioner and the Weaver brothers over a radio. When Petitioner, Kenneth Weaver, and Keith Weaver left the bar, the victim approached Peterson and informed her that the three men with whom he had been arguing had taken his radio. Soon thereafter, Peterson left the bar, where she again observed the victim, Petitioner, and the Weaver brothers. Peterson heard Petitioner say to the victim that "where he was going he didn't need a radio." She also stated that the Weavers and Petitioner informed the victim that he should remain at the bar until they returned, but that if he remained there, "he wouldn't ever see daylight."

Later in the evening, Peterson visited the home of Gerald Marks, who lived several blocks from the bar. When he didn't answer, she began to walk toward her house; during the route, she heard Petitioner, Keith Weaver, and Kenneth Weaver arguing with the victim by a Detroit Bank and Trust branch located at the intersection of Jefferson Avenue and Hillger Street. Soon thereafter, she observed Fred Thompson arrive in an automobile, with a shotgun, and join the other men. Hearing two gunshots, Peterson ran toward her house.[7]

An off duty Sergeant of the Detroit Police Department, George Taylor, who lived on Hillger Street, heard three gunshots at approximately midnight on October 9, 1979. One minute after he heard the third gunshot, Sergeant Taylor noticed Petitioner and either Keith or Kenneth Weaver emerge from an alley. Knowledgeable of Taylor's position with the Detroit Police Department, Petitioner, as he walked toward his house, also located on Hillger Street, looked in the direction of the resi-

dence of Sergeant Taylor. Petitioner and one of the Weaver brothers entered Petitioner's house; when they exited, Sergeant Taylor asked them whether they heard or saw anything, to which both men replied that they heard gunshots but did not see anything related to the gunshots.

After Hagwood was shot, Petitioner and one of the Weaver brothers returned to the San-Zu-Zee bar. A barmaid, Arbura Brown, testified that Petitioner, while laughing and smiling, asked her whether she heard gunshots outside of the bar. On cross-examination, Brown stated that it was not unusual for Petitioner to smile and laugh while he was at the bar.

### IV. *Applicable Law*

■ Under *Jackson v. Virginia*,[8] a challenge to a state court conviction on the ground that the evidence was insufficient to establish guilt beyond a reasonable doubt raises a federal constitutional claim. In *Jackson*, the Supreme Court enunciated the following standard with respect to an insufficiency of the evidence claim:

> We hold that in a challenge to a state criminal conviction brought under 28 U.S.C. § 2254—if the settled procedural prerequisites for such a claim have otherwise been satisfied—the applicant is entitled to habeas corpus relief if it is found that upon the record evidence adduced at the trial no rational trier of fact could have found proof of guilt beyond a reasonable doubt.[9]

Defendant was convicted of aiding and abetting in the second-degree murder of Alfred Hagwood. In Michigan, the elements of second-degree murder are (1) a homicide occurred; (2) the accused killed with malice aforethought but without premeditation and deliberation; and (3) the provacation leading to the act did not deprive the actor of the exercise of reason to

---

7. Ms. Peterson was not an exemplary witness; she had difficulty recalling part of the incident and was a substance abuser. As the assistant prosecuting attorney noted in his opening statement, the police do not have control over individuals who witness crimes.

8. 443 U.S. 307, 322, 99 S.Ct. 2781, 2790, 61 L.Ed.2d 560 (1979)

9. *Jackson* at 324, 99 S.Ct. at 2791

the extent that the murder would be reduced to manslaughter.[10]

In 1855, the Michigan Legislature enacted an aiding and abetting statute (currently M.C.L.A. § 767.39, M.S.A. § 28.979), which abolished the common law distinction between accessories before the fact and principals. Under the statute, one who counsels, aids, or abets in the commission of an offense may be prosecuted and convicted as though he had directly committed the offense.[11] In *People v. Palmer*,[12] the Michigan Supreme Court defined the term "aiding and abetting":

> In criminal law the phrase "aiding and abetting" is used to describe all forms of assistance rendered to the perpetrator of a crime. This term comprehends all words or deeds which may support, encourage or incite the commission of a crime. It includes the actual or constructive presence of an accessory, in preconcert with the principal, for the purpose of rendering assistance, if necessary. The amount of advice, aid or encouragement is not material if it had the effect of inducing the commission of the crime. (Citations omitted.)

A careful review of the trial transcript leads this Court to conclude that the prosecution adduced sufficient evidence to justify a reasonable fact finder to conclude, beyond a reasonable doubt, that Petitioner aided and abetted in the second-degree murder of Alfred Hagwood. Viewing the evidence in a light favorable to the prosecution, the Court determines that evidence was presented that (1) Petitioner threatened the victim two hours before the shooting; (2) Petitioner was seen arguing with the victim nearly immediately preceding the fatal force used by Fred Thompson, an acquaintance of Petitioner; (3) Petitioner was with Fred Thompson three to four hours before the shooting; (4) Petitioner exhibited possible furtive actions when he walked by a Detroit Police Sergeant's

house minutes after the incident; and (5) after the shooting, Petitioner, in a smiling and laughing manner, asked a barmaid whether she heard gunshots. Although this is not a case where the accused confessed to the crime or was apprehended while holding a "smoking gun," the evidence presented by the prosecution, a mixture of circumstantial and direct evidence, was, in this Court's view, of a compelling and convincing nature so as to easily withstand a motion for a directed verdict or a petition for post-judgment relief premised on an insufficiency of the evidence claim.

## V. *Conclusion*

In view of the foregoing analysis, Petitioner's Application for Writ of Habeas Corpus is DENIED. A judgment to that effect will be entered.

## MEMORANDUM OPINION AND ORDER DENYING PETITIONER'S APPLICATION FOR A CERTIFICATE OF PROBABLE CAUSE

On January 10, 1986, this Court denied Petitioner's application for a Writ of Habeas Corpus, rejecting his contention that the assistant prosecuting attorney adduced insufficient evidence to justify a reasonable jury to conclude that he was guilty beyond a reasonable doubt of aiding and abetting in the second-degree murder of Alfred Hagwood. A review of the trial transcript led the Court to conclude that the circumstantial and direct evidence presented by the prosecution, such as (1) threats made by the Petitioner to the victim on the evening of the homicide; (2) Petitioner's presence at the scene of the slaying; (3) furtive actions taken by Petitioner when he walked by a police officer's house shortly after the shooting; and (4) a reference by Petitioner, while he was at a bar shortly after the fatal event, to the sound of gunshots.

**10.** *People v. Stanek*, 61 Mich.App. 573, 233 N.W.2d 89, 91 (1975); 3 Gillespie, Michigan Criminal Law & Procedure (2d ed.), § 1639, pp. 1973–1974

**11.** *People v. Gould*, 384 Mich. 71, 179 N.W.2d 617, 620 (1970)

**12.** 392 Mich. 370, 220 N.W.2d 393, 396–397 (1974)

**12**

On February 10, 1986, Petitioner filed a timely Motion, under Fed.R.App.P. 22(b), for a Certificate of Probable Cause to Appeal the denial of his habeas corpus petition to the Sixth Circuit Court of Appeals. This appellate rule provides:

> In a habeas corpus proceeding in which the detention complained of arises out of process issued by a state court, an appeal by the applicant for the writ may not proceed unless a district or a circuit judge issues a certificate of probable cause. If an appeal is taken by the applicant, the district judge who rendered the judgment shall either issue a certificate of probable cause or state the reasons why such a certificate should not issue.

In *Barefoot v. Estelle*,[1] the United States Supreme Court held that the probable cause standard means more than an absence of frivolity and the existence of good faith in prosecuting a habeas corpus appeal. Under *Barefoot*, a certificate of probable cause should not be issued unless the Petitioner makes a "substantial showing of the denial of a federal right."[2] Quoting from *Barefoot*, the Fifth Circuit Court of Appeals, in *Flowers v. Blackburn*, stated that a Petitioner achieves the "substantial showing" standard by (1) demonstrating that the issues are reasonably debatable; (2) the questions are adequate to warrant further analyses; and (3) an appellate court could resolve the issues in a different fashion.[3]

■ A reexamination of the trial transcript and its Opinion denying relief to Petitioner leads the Court to conclude that Petitioner has not satisfied the test enunciated in the *Flowers* and *Barefoot* cases. In a fair trial, where Petitioner was adeptly represented by counsel, the prosecutor presented sufficient circumstantial and direct evidence of Petitioner's involvement in the homicide of Albert Hagwood. Noting that he now has obtained three reviews of his jury conviction, two at the state level,

the court determines that there is no substance to Petitioner's claim that his Federal Constitutional Rights were violated.

Consequently, Petitioner's Application for a Certificate of Probable Cause is DENIED.

---

1. 463 U.S. 880, 103 S.Ct. 3383, 3394, 77 L.Ed.2d 1090 (1983), *reh'g denied,* 464 U.S. 874, 104 S.Ct. 209, 78 L.Ed.2d 185.

2. *Id.*

3. 764 F.2d 266, 267 (5th Cir.1985).